■ PETER M. GROESCHEL, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 60009.)—Appeals (1) from a judgment in favor of claimant, entered July 19, 1978, upon a decision of the Court of Claims, and (2) from an order of the Court of Claims, entered December 18, 1978, which denied claimant's motion to set aside and vacate the judgment entered July 19, 1978. On October 27, 1975, the State of New York appropriated a strip of land comprising 1.118 acres of land along the frontage of claimant's land situated on the westerly side of North Peterboro Street in the Village of Canastota, Madison County. Prior to the appropriation, claimant owned 12.17 acres of land, of which 10.79 acres were unimproved, and 1.38 acres were improved. The property was improved with a one-story frame and metal covered structure containing 9,000 square feet, 6,000 of which was warehouse, and the remainder offices, order room and incidental areas. The court found the highest and best use of the land before the taking was as a beer distribution center, which was the business that claimant operated on the land. The value of the land in the improved section of claimant's property was found by the court to be $8,000 per acre or $11,040, and the unimproved section to be worth $3,000 per acre or $32,370. The court found

the value of the improved site to be $80,000, of which $11,040 was allocated to the land, $1,520 to land improvements, and $67,440 to the structure. The land appropriated reduced the setback of claimant's improvement from 90 feet to 21 feet at the office, and 40 feet at the entrance to the warehouse. The turn-around area for tractor trailers backing into the warehouse was found by the court to be eliminated by this reduction of the setback. Before the taking, the warehouse structure which was aligned in an east-west direction, had an extra reinforced central truckway on which the forklift trucks for unloading tractor trailers were operated, and along which a tractor trailer could back to the exact point at which that shipment of beer was to be stored in the warehouse. The entrance providing access to this truckway was a large 12-foot by 12-foot overhead door at the east end of the building. Tractor trailers bringing products to the warehouse were able to back into the warehouse directly off the highway, or they could pull down the driveway, maneuver in the 90 feet or so of space between the highway and the warehouse, and back into the warehouse truckway. They could back in as far as was desired to unload with a forklift truck right at the point of storage. Kegs being delivered were taken all the way back to the northwest corner opposite a walk-in cooler which jutted out into the truckway. The walk-in cooler was on the southwest corner. One side of a side loading truck would be loaded from the order and pick room, and then driven out, maneuvered around, come in on the truckway with the other side directly adjacent to the order and pick room. The order and pick room was adjacent to an office, and the loading could be monitored from an office so that records were maintained of people taking out and loading goods, to help avoid pilferage. The State's taking eliminated the room for maneuvering tractor trailers on the claimant's land to back in the east door and along the center concrete truckway. Even the claimant's own trucks for delivery took more room to maneuver and go in the east door than the remaining property provided. The State's appraiser conceded that the reinforced concrete center truckway was to allow the forklift trucks and tractor trailers to travel on it inside the warehouse. The side areas outside that reinforced center truckway were for storage only. The State also conceded that, after the taking, there was insufficient room to allow the same utility from the warehouse east entrance or for the order area. The court found that the fair and reasonable market value of the property before the appropriation was $112,370, and that the after value was $47,540, and that claimant's damages were $5,100 direct damages and $59,730 consequential damages. The State concedes its acceptance of all the court's finding except its finding as to cost to cure. Claimant's cost to cure included extending Tarvia Drive along the entire north side of the warehouse to an area on the west side of the warehouse. Prior to the appropriation, the entrance to the warehouse was at the east end of the warehouse. Claimant's plan was to make the entrance to the warehouse on the west end by a double sliding door. On the west end of the warehouse, claimant proposed to construct a 160-foot turn-around area to be used by the drivers of tractor trailers. Claimant proposed to move the walk-in cooler from the west end of the warehouse to the east end, and to construct an entirely new order room and offices at the west end of the building. The State submitted a cost to cure proposal which included an overhead door on the northerly side of the warehouse for access to the warehouse. The State's proposal also included extending Tarvia Drive, a driveway built by the State from the highway into claimant's land to the area north of the warehouse, and to provide a turn-around area for tractor trailers on the vacant unimproved land on the north side of the warehouse.

The State was of the opinion that the cost to cure would be $5,200, while claimant's cost to cure amounted to $85,100, and the court awarded $53,640 for cost to cure. The State appeals as excessive the cost to cure part of the award. The State contends that the cost to cure awarded provides the claimant with facilities and benefits he did not have prior to the appropriation which included a driveway the entire length of the warehouse, a turnaround of 100 feet at the west end of the warehouse, a new door in the west end of the warehouse, a brand new office and a brand new order room, together with $11,566.75, the cost of a new cooler installed, all of which are in excess of what claimant had on the date of the appropriation. The State conceded that, after the taking, there was insufficient room to allow the same utility for the warehouse east entrance or for the order area. The State's plan for curing the loss of the east access to the central warehouse truckway was simply to provide two new doors; one, some place on the north side, one on the south side of the order and picking room. The State stated that the cure plan was only to let the tractor trailers back up to the new north door. This was consistent with the statement that unloading before was from the east driveway, but was greatly different than the testimony of trucks being unloaded inside the warehouse. The Court of Claims, in its decision, stated: "The severe setback reduction which eliminated the pre-existing turnaround area for trucks and hence, their access to the warehouse area as utilized in the before situation and relocated driveway situation caused considerable damage to the pre-taking utility of subject's structure. * * * Claimant's approach is to change the pick-up and delivery by trucks to the rear of the building where the same pre-taking and sufficient vehicular maneuverability could be provided for and to re-design other internal areas to re-achieve the structure's pre-existing integrated and efficient utility and use. The Court concludes that Claimant's basic approach is more feasible and reasonable as a cure to the adverse effects of the taking upon the structure." The decision and award of the Court of Claims is supported by the record, and should be affirmed. The motion of claimant for an order setting aside and vacating the judgment on the ground of misrepresentation by the State regarding damages sustained by claimant relating to a rental charge of $100 per month for use of State land bordering claimant's property as a truck turnaround is wholly without merit. Judgment, entered July 19, 1978, affirmed, without costs. Order, entered December 18, 1978, affirmed, without costs. Mahoney, P. J., Kane, Staley, Jr., Mikoll and Casey, JJ., concur.